**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**AMY KING,**

                                        **Plaintiff,**

        **vs.**                                                 **1:23-CV-1400**
                                                                **(MAD/CFH)**

**NEW YORK STATE DEPARTMENT OF**
**EDUCATION,**

                                        **Defendant.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**HARDING MAZZOTTI, LLP**               **KELLY A. MAGNUSON, ESQ.**
P.O. Box 15141
1 Wall Street
Albany, New York 12212–5141
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**              **RYAN W. HICKEY, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On September 12, 2023, Plaintiff commenced this action in New York State Supreme

Court, Albany County. *See* Dkt. No. 1. In her complaint, Plaintiff asserts a single cause of action

for alleged discrimination under the Americans with Disabilities Act of 1990. *See* Dkt. No. 2.

Defendant was served with the summons and complaint on October 18, 2023, and Defendant

removed the action to this Court on November 7, 2023.

Currently before the Court are Defendant's motion to dismiss and Plaintiff's cross-motion to amend the complaint. *See* Dkt. Nos. 14 & 17.

## II. BACKGROUND[1]

Plaintiff, Amy King, is an individual residing in Albany, New York, and is an Associate in Education of Students with Disabilities, presently employed with Defendant, the New York State Education Department. *See* Dkt. No. 17-4 at ¶ 13. Plaintiff has worked for Defendant for nineteen years, with an employment start date of August 2004. *See id.* at ¶ 14. Defendant, New York State Education Department, is an agency of the State of New York that is responsible for the supervision of all public schools and standardized testing in New York State, with offices located at 80 Wolf Road, #203, Albany, New York. *See id.* at ¶ 15.

In 2006, Plaintiff was diagnosed with a rare autoimmune kidney disease called Minimal Change Disease ("MCD"). *See id.* at ¶ 17. This disease is characterized as an idiopathic glomerular disease that causes nephrotic syndrome. *See id.* Nephrotic syndrome includes severe swelling of the eyes, ankles, feet and legs; foamy urine; weight gain from fluid/edema; fatigue; loss of appetite; blood clots; high cholesterol and triglycerides; poor nutrition from loss of protein; high blood pressure; loss of kidney function; and increased risk of infections. *See id.* at ¶ 18. This is a serious and life-threatening medical condition that has no permanent cure. *See id.* at ¶ 19.

Plaintiff's condition has had periods of remission over the last eighteen years, but unfortunately, relapsed in April 2021, at which point she began receiving immunosuppressive therapy as a treatment for her condition. *See id.* at ¶ 20. During the relapse, Plaintiff's energy,

---

[1] The following factual recitation is derived from Plaintiff's proposed first amended complaint. *See* Dkt. No. 17-4.

strength and endurance were severely compromised, and she spent several days hospitalized out of work. *See id.* Plaintiff claims that "between April 2021 and March 2023, Plaintiff's MCD relapse caused a physical impairment that substantially limited one or more of her major life activities (energy level, strength and ability to travel or to be near potential contagious disease). Furthermore, she has a history and *record* of impairment due to MCD." *Id.* at ¶ 21 (emphasis in original).

On May 13, 2021, Plaintiff started prednisone therapy. *See id.* at ¶ 22. Prednisone is a corticosteroid that decreases the body's immune system response to help alleviate debilitating symptoms. *See id.* In May of 2022, Plaintiff started tacrolimus – an immunosuppressive macrolide calcileurin inhibitor which helps reduce proteinuria. *See id.* at ¶ 23. In or around March of 2023, Plaintiff started a clinical trial drug, similar to the immunotherapy rituximab. *See id.* at ¶ 24.[2]

While all of the aforementioned immunosuppressants were taken in order to help treat her chronic condition, they also significantly reduced Plaintiff's immune system's response, which in turn reduced the ability to fight infections and diseases. *See* Dkt. No. 17-4 at ¶ 25. The immunosuppressive therapy put Plaintiff at a higher risk for contracting COVID-19 and other contagious illnesses, and at a higher risk for serious illness if she contracted COVID. *See id.* at ¶ 26. As such, at the direction of her nephrologist, Dr. Frank Cortazar, Plaintiff made every possible effort to limit her interactions with others due to the heightened risk of illness. *See id.* at ¶ 27. In light of her diagnosis of MCD, Dr. Cortazar provided Plaintiff with documentation to accompany her request for an accommodation to work remotely 100% of the time while

---

[2] The name of the drug is not provided as part of the study because it is not yet an FDA approved drug and the clinical study is to determine whether the medication is effective. *See* Dkt. No. 17-4 at ¶ 24.

undergoing this intensive immunosuppressive therapy. *See id.* at ¶ 28. While Plaintiff had received the vaccination and boosters to protect against COVID, it is and was well known that vaccines are less effective or ineffective for immunosuppressed individuals. *See id.* at ¶ 29. According to Plaintiff, blood work completed on August 15, 2023, indicated that she was still immunocompromised as of that date. *See id.* at ¶ 31. Plaintiff claims that she provided medical documentation to Defendant in the form of multiple physician notes regarding her condition on the following dates: July 16, 2021, January 4, 2022, March 7, 2022, June 7, 2022, August 11, 2022, and October 27, 2022. *See id.* at ¶ 32.

At Plaintiff's location of employment – 80 Wolf Road, Albany, New York – visitors to the building and employees are not required to wear masks. *See* Dkt. No. 17-4 at ¶ 35. The location of Plaintiff's physical work address is a busy public building which includes, but is not limited to, housing a bank, a financial consultant's office, a security consultant's office, a public café, and an access/VR office, all of which are open to the public. *See id.* at ¶ 36. Plaintiff's work location is on the second floor, and she has to take an elevator or stairs to get to her office. *See id.* at ¶ 37. While Plaintiff does have a small office with a door, it is impossible for Plaintiff to remain inside her office for the entirety of an eight-hour workday. *See id.* at ¶ 38. Plaintiff does not have a bathroom inside of her office, nor does she have a kitchen where she could prepare her lunch. *See id.* at ¶ 39. Additionally, Plaintiff is required to use a printer outside of her individual office space and obtain supplies and things needed during the workday from outside of her office. *See id.* at ¶ 40.

Defendant initially approved Plaintiff's request to work from home on June 29, 2022, with an expiration date of August 15, 2022. *See id.* at ¶ 49. Defendant's June 29, 2022, letter stated that Plaintiff's reasonable accommodation request to telework would be reviewed and further

considered, and a determination will be issued regarding the continuation of Plaintiff's accommodation beyond the expiration date of August 15, 2022. *See id.* at ¶ 50. The June 29, 2022, letter further stated that Defendant "may request additional information and documentation" as they "continue to engage [in] the reasonable accommodation interactive process." *Id.* Plaintiff contends that Defendant failed to request any additional information or documentation from Plaintiff after the June 29, 2022, letter. *See id.* at ¶ 51. Rather, Plaintiff claims that she was not contacted at all by Defendant until August 16, 2022, the date she received Defendant's letter denying her request to continue working remotely and directing Plaintiff to resume working in-person on August 22, 2022. *See id.* In the August 16, 2022 letter, Defendant set forth all of the ways in which Plaintiff's March 7, 2022, medical documentation was insufficient. *See id.* at ¶ 52. Plaintiff claims that she had no way of knowing that the medical documentation included in her June 7, 2022, reasonable accommodation request was insufficient, since it had been sufficient up until that time. *See id.* at ¶ 53. Plaintiff contends that Defendant did not seek or offer any interactive process regarding her reasonable accommodation request between the June 29, 2022, temporary approval and the August 16, 2022, denial. *See id.* at ¶ 54.

Plaintiff argues that both Defendant's response to her appeal and the August 16, 2022, reasonable accommodation denial included inaccuracies regarding the essential functions of Plaintiff's job and relied only on an incorrect scope of the essential functions of her position. *See id.* at ¶ 55. Defendant stated that "part of your essential job functions are to interface with other department to make determinations for appeals to provide an impartial determination," which Plaintiff claims is false. *See id.* at ¶ 56. The August 16, 2022, denial letter also stated that Plaintiff was required to supervise staff on a regular basis to discuss work products, which Plaintiff disputes. *See id.* at ¶ 57. Defendant stated that telecommuting beyond its established

telecommuting policy of 30% creates an undue hardship for Defendant, without elaborating on how or why this would create an undue hardship. *See id.* at ¶ 58. Plaintiff claims that her direct supervisors – Karen Grimm, Linda Laferriere and Justyn Bates – have no objection to Plaintiff working remotely. *See id.* at ¶ 59. Moreover, Plaintiff contends that she "had been telecommuting effectively and efficiently without entering the building from March 2020 up until August 22, 2022, almost two and one-half years, with no negative impact on her productively or completion of her essential duties." *Id.* at ¶ 60. Plaintiff further claims that Defendant's additional claims regarding the essential functions of her job are all either not essential job duties or, if they were, they could all be performed while working remotely. *See id.* at ¶¶ 61-63.

On October 3, 2022, Plaintiff received an e-mail from Director of Diversity and Access Elatisha Kirnon asking, "have you spoken to your doctor about alternatives in the workplace? Is your doctor aware that you have a private office?" Dkt. No. 17-4 at ¶ 65. On October 5, 2022, Plaintiff "responded to Kirnon's rhetorical questions and asked, 'Can you tell me whether I can re-apply again for this accommodation? Or is the department no longer allowing full time telecommuting for any employees with an office, regardless of their specific situation?'" *Id.* at ¶ 66. Plaintiff claims that Kirnon failed to respond. *See id.* Additionally, Plaintiff alleges that, contrary to Defendant's response to her complaint dated November 18, 2022, Plaintiff "proposed an alternative to her supervisors in an October 6, 2022, e-mail: private first floor office with exterior entrance and adjacent private bathroom, designated parking space, no in-person meetings, and enhanced ventilation." *Id.* at ¶ 67. The only response from Defendant was verbal and they advised Plaintiff that this alternative could not be implemented. *See id.* at ¶ 68.

Even though the October 27, 2022, physician note provided by Plaintiff indicated a return-to-work estimate of September 8, 2023, Plaintiff returned to working in the office 70% on May 1,

2023, pursuant to Defendant's department-wide telecommuting allowance, because her accommodation request was denied. *See id.* at ¶ 71. Plaintiff claims that "[f]rom August 22, 2022 through May 1, 2023[,] Plaintiff was unable to work because of the failure of the State to accommodate her. As a result, she had no choice but to use her accrued time for that almost nine month period which almost completely exhausted all of her accruals. Plaintiff could and would have been able to work remotely during this time period." *Id.* at ¶ 72. "Plaintiff has been forced to utilize the majority of her accrued sick time, vacation time and other available accrued time because of Defendant's failure to provide her with a reasonable accommodation of remote working." *Id.* at ¶ 73. "As a result of being forced to use her accrued time, rather than working remotely under accommodation for her medical condition, Plaintiff has been financially harmed by the loss of her accrued time which she will not have if she becomes ill again. Furthermore, Plaintiff would have been paid the value of her accrued time at retirement and intended this money to supplement her retirement income." *Id.* at ¶ 74.

### III. DISCUSSION

**A.    Standard of Review**

*1. Motion to Amend*

"Where, as here, 'a plaintiff seeks to amend [the] complaint while a motion to dismiss is pending, a court has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" *Krul v. Brennan*, 501 F. Supp. 3d 87, 95 (N.D.N.Y. 2020) (quoting *Morris v. N.Y. State Police*, 268 F. Supp. 3d 342, 358 (N.D.N.Y. 2017)). "After the twenty-one day period in which to serve an amendment as of right has expired, 'a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave to

amend when justice so requires.'" *Id.* (quoting Fed. R. Civ. P. 15(a)(2)). "The Second Circuit has explained that 'district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility.'" *Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 367 (N.D.N.Y. 2021) (quoting *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000)).

Here, Defendant contends that leave to amend should be denied because amendment would be futile and it would be prejudicial to Defendant. As set forth below, the Court finds that amendment is not futile and, therefore, rejects this argument. As to prejudice, Defendant argues that "Plaintiff's proposed amended complaint introduces new information regarding Plaintiff's alleged medical condition that was not before the Department in its original consideration of this matter. Prior to receipt of Plaintiff's opposition papers, the Department was unaware of the exact name of Plaintiff's condition, as well as her medical history dating from 2006 to the present. All that was presented to the Department in Plaintiff's prior accommodation requests was that she has a 'chronic illness that requires immunosuppressive therapy' and a 'higher risk of contracting COVID,' without any further detail." Dkt. No. 24 at 6. The Court finds Defendant's claimed prejudice unpersuasive. First, the Court notes that in Plaintiff's accommodation request, she specifically indicated that she has "kidney disease for which [she was] taking immunosuppressant medication." Moreover, in its June 29, 2022 letter, Defendant stated that Plaintiff's "reasonable accommodation request to telework 100% will be reviewed and further considered, and a determination will be issued regarding the continuation of [P]laintiff's reasonable accommodation beyond the expiration date of August 15, 2022. The June 29, 2022, letter further stated that [D]efendant 'may request additional information and documentation' as they 'continue to engage the reasonable accommodation interactive process.'" Dkt. No. 17-4 at ¶ 50. Defendant, however,

failed to request any additional information or documentation from Plaintiff regarding her medical condition and, instead, simply denied Plaintiff's request on August 16, 2022. *See id.* at ¶ 51. To place blame on Plaintiff for Defendant's failure to obtain this additional information during the interactive process would be patently unfair.

Accordingly, the Court grants Plaintiff's motion to amend the complaint and will consider the merits of Defendant's motion to dismiss in light of the amended complaint.

### 2. Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on

[their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of the 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [] complaint must be dismissed[,]" *id.* at 570.

## B.    Failure to Accommodate

Discrimination claims are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (citation omitted).  To survive a motion to dismiss, however, a plaintiff "is not required to plead a *prima facie* case under *McDonnell Douglas*." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015); *see also Chalmers v. City of New York*, No. 20 Civ. 3389, 2021 WL 4226181, *3 (S.D.N.Y. Sept. 16, 2021) (holding that "the elements of a *prima facie* case 'provide an outline of what is necessary' to render such claims plausible") (quoting *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013)).  Rather, a plaintiff only need "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87.  At the motion to dismiss stage, "the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[ ] their claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

To plausibly set forth a failure to accommodate claim under the ADA, the plaintiff must allege the following: (1) she is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, she could perform the essential functions of the job at issue; and (4) the employer refused to make such accommodations. *See McMillan*, 711 F.3d at 125-26 (quotation omitted).

### 1. Disability Within the Meaning of the ADA

In its motion, Defendant contends that Plaintiff has failed to allege "that her kidney condition, or her immunosuppressive therapy, renders her unable to perform the duties of her job." Dkt. No. 14-1 at 6.  "Rather, Plaintiff alleges that, although she is *able* to perform the duties of her job while present at the Department's offices, she wishes to telecommute from her home as a way to mitigate risk that she will contract COVID-19 while immunosuppressed." *Id.* (emphasis in original).  Defendant argues that "[t]his is not a situation that the ADA was enacted to address." *Id.*  Defendant further contends that Plaintiff has failed to plausibly allege "that her course of immunosuppressive therapy was sufficient in duration, severity, or impact to constitute a disability under the ADA." *Id.* at 7 (citation omitted).

A qualifying "disability" under the ADA is a "physical or mental impairment that substantially limits one or more major life activities," or "being regarded as having such an impairment." 29 C.F.R. § 1630.2(g).  The Equal Employment Opportunity Commission has clarified that when applying the ADA, the disability must "be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of [the statute]." 29 C.F.R. § 1630.2(j)(1)(i); *accord Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 (2d Cir. 2014).  It follows that, "the term major shall not be interpreted strictly to create a demanding standard for disability," 29 C.F.R. § 1630.2(i)(2), and "the term 'substantially limits' shall be

construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(1)(i).  "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting," and the "primary object of attention in cases brought under the ADA should be whether . . . discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." *Id.* § 1630.2(j)(1)(iii)-(iv).  The Second Circuit has noted that "the substantial-limitation requirement in the definition of 'disability' is not an exacting one." *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020).

"[T]he ADA Amendments Act ('ADAAA') of 2008 [ ] broadened the definition of disability." *Durr v. Slator*, No. 5:20-CV-00662, 2023 WL 8277960, *8 (N.D.N.Y. Nov. 30, 2023).  Under the ADAAA, major life activities include, but are not limited to, "learning, reading, concentrating, thinking . . . and working," as well as "the operation of a major bodily function, including but not limited to, functions of the immune system . . . [and] endocrine . . . functions." 42 U.S.C. § 12102(2).  The determination of "'whether an impairment substantially limits a major life activity [must] be made without regard to the ameliorative effects of mitigating measures' such as medication, psychotherapy, or behavioral therapy." *Mercado v. Dep't of Corr.*, No. 3:16-CV-1622, 2018 WL 2390139, *10 (D. Conn. May 25, 2018) (quoting 28 C.F.R. §§ 35.108(d)(1)(viii), 35.108(d)(4)); *see also Levy v. New York State Dep't of Env't Conservation*, 297 F. Supp. 3d 297, 312 (N.D.N.Y. 2018) (finding that, under the ADAAA, a plaintiff who had Type One diabetes was disabled even though he took medication, because under the amended ADA "[t]he efficacy of plaintiff's treatments at controlling his diabetes is . . . not a relevant consideration for determining whether his diabetes is a disability").

Additionally, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).  A "disability"

under the amended statute "now covers impairments 'lasting or expected to last less than six months'" and "[t]he statute does not suggest that there is any duration that is too short." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 94-95 (2d Cir. 2021). "Put another way, [an] actual disability claim under the ADA cannot fail solely because [a plaintiff] did not allege a permanent or chronic disability." *Patterson v. EmblemHealth Inc.*, No. 22-CV-2177, 2023 WL 5671531, *5 (S.D.N.Y. Sept. 1, 2023). Courts must conduct a "fact-specific inquiry" to determine if a plaintiff has plausibly alleged that she is disabled under the ADA. *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69-70 (2d Cir. 2014) (noting that whether an impairment substantially limits a major life activity depends on "the totality of the circumstances"); *see also* 29 C.F.R. § 1630.2(j)(1)(iv) ("The determination . . . requires an individualized assessment").

In the present matter, the Court finds that Plaintiff's amended complaint plausibly alleges that she is a person with a disability within the meaning of the ADA.[3] In her amended complaint, Plaintiff has alleged that she has MCD, a chronic autoimmune disease that significantly affects her life in multiple respects. *See* Dkt. No. 17-4 at ¶¶ 16-30. The definitions contained within the ADA state that a "major life activity also includes the operation of a major bodily function,

---

[3] The Court notes that, although Defendant initially contested this element in its motion to dismiss, it has seemingly conceded that the proposed amended complaint plausibly alleges this element. *See* Dkt. No. 24 at 6. Specifically, in responding to Plaintiff's motion to amend, Defendant notes that Plaintiff added new allegations concerning the nature and history of her medical condition, but does not argue that the amended complaint is futile as to this element, which it continues to do as to other elements of Plaintiff's *prima facie* case. *See id.* Rather, Defendant argues that it would be prejudicial to permit amendment insofar as the "proposed amended complaint introduces new information regarding Plaintiff's alleged medical condition that was not before the Department in its original consideration of this matter." *Id.* Defendant further notes that, "[p]rior to receipt of Plaintiff's opposition papers, the Department was unaware of the exact name of Plaintiff's condition, as well as her medical history dating from 2006 to the present. All that was presented to the Department in Plaintiff's prior accommodation requests was that she has a 'chronic illness that requires immunosuppressive therapy' and a 'higher risk of contracting COVID,' without any further detail." *Id.*

including but not limited to, functions of the immune system[.]" 42 U.S.C. § 12102(2)(B).

Plaintiff has further alleged that her life activities were limited by the medicine she was required

to take to treat her condition.  Specifically, Plaintiff has alleged that she was required by her

physician to protect herself from germs and viruses because beginning in April 2021 she was

receiving immunosuppressive therapy as a treatment for her condition, which had relapsed.  *See*

Dkt. No. 17-4 at ¶¶ 19-20.  Plaintiff further alleges that, between April 2021 and March 2023, her

MCD relapse and the treatment she was receiving caused her to experience decreased energy,

strength and endurance, and she was hospitalized for several days.  *See id.* at ¶¶ 21-25.  Plaintiff

claims that the immunosuppressive therapy put her at a higher risk for contracting COVID and

other contagious diseases, and a higher risk for serious illness should she contract any such

disease.  *See id.* at ¶¶ 25-28.

Defendant argues that Plaintiff has alleged that, although she is able to perform the duties

of her job while present at Defendant's office, she wishes to telecommute from her home as a way

to mitigate the risk that she will contract COVID while immunosuppressed.  *See* Dkt. No. 14-1 at

6.  According to Defendant, "[t]his is not a situation that the ADA was enacted to address." *Id.*

The Court disagrees and finds Defendant's reasoning unpersuasive.

In *Arazi v. Cohen Brothers Realty Corp.*, No. 1:20-cv-8837, 2022 WL 912940 (S.D.N.Y.

Mar. 28, 2022), the defendant argued that the plaintiff did not "did not, in fact, seek an

accommodation for her multiple sclerosis, but instead sought an accommodation for 'the fear of

being at risk of developing a severe form of COVID-19.'" *Id.* at *7.  The court disagreed with the

defendant, finding the argument "nonsensical." *Id.*  Specifically, the court held that the plaintiff

did not request an accommodation because she "feared" COVID-19; rather, the plaintiff requested

to work from home during the pandemic "since she was at high risk due to her Multiple

Sclerosis." *Id.* "To break it down, [the plaintiff's] multiple sclerosis impaired her immune system, such that she was more susceptible to serious illness should she develop COVID-19.  Thus, because of her multiple sclerosis, working in an office with numerous other people during the COVID-19 pandemic posed a higher risk to [the plaintiff] than it would to most other employees. As alleged, an accommodation could mitigate that increased risk – an increased risk which, again, stemmed from her multiple sclerosis." *Id.*  The court concluded that under the defendant's "skewed theory, a person suffering from diabetes would arguably seek an accommodation – such as periodic breaks to check their blood sugar – not because they have diabetes, but because they 'fear' hypoglycemia.  That is plainly not the case." *Id.*

Here, as in *Arazi*, Plaintiff has plausibly alleged that she is a person with a disability within the meaning of the ADA and that her requested accommodation was because of both her diagnosed MCD and the medical treatment she was receiving that severely compromised her immune system.  Accordingly, Plaintiff's amended complaint has plausibly alleged that she is disabled within the meaning of the ADA and this aspect of Defendant's motion to dismiss is denied.

### 2. Adverse Employment Action

In its motion, Defendant argues that Plaintiff has failed to allege that it took an adverse action against her because of her purported disability.  *See* Dkt. No. 14-1 at 7-8.  Defendant contends that Plaintiff remains employed by Defendant and does not allege that it "ever accused her of performance deficiencies or inadequacies, disciplined her, demoted her, attempted to terminate her, or otherwise took any sort of adverse action against her *because* of her disability." *Id.* at 8 (emphasis in original).  In response, Plaintiff argues that she adequately alleges an adverse employment action in that she alleges that she "was caused to remain out of work for many

months when she could have been working fat home with the same work from home accommodation she had previously been granted.  Because of Defendants' [sic] failure to accommodate her, Plaintiff was forced to utilize the accrued time off that she had banked for many years.  As a result, Plaintiff lost the ability to use this substantial accrued time in the future or to be paid out for the time upon retirement if it remained unused." Dkt. No. 27 at 2.

In its motion, Defendant relies on a Second Circuit case in which the court stated that in ADA failure-to-accommodate cases, the plaintiff must also allege that he or she suffered an adverse employment action in addition to the four elements set forth above.  *See* Dkt. No. 14-1 at 7 (citing *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 108 (2d Cir. 2001)).  Courts have noted that decisions in the Second Circuit (among others) are not entirely uniform in setting forth the elements of this claim, but that the predominant view of the decisions from the Second Circuit "does not support the incorporation of an adverse-employment-action requirement into an ADA failure-to-accommodate claim." *Exby-Stolley v. Bd. of Cnty. Commissioners*, 979 F.3d 784, 808-10 (10th Cir. 2020) (discussing the fact that the Second Circuit has occasionally included a requirement of "adverse employment action" in failure-to-accommodate claims, but more frequently does not require it) (citations omitted).  For example, in *McMillan v. City of New York*, 711 F.3d 120 (2d Cir. 2013), the Second Circuit stated that, in addition to those ADA discrimination claims alleging that the employee "suffered adverse employment action because of disability," *id.* at 125 (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)), "[a]n employer may *also* violate the ADA by failing to provide a reasonable accommodation," *id.* (emphasis added); *see id.* at 126 (repeating the distinction between "discrimination claims based ... on adverse employment actions" and those based "on failures to accommodate"); *see also Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006) ("In so-called

reasonable-accommodation cases, such as this one, the plaintiff's burden 'requires a showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations'") (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004)).

Courts in the Second Circuit have acknowledged this apparent discrepancy. For example, in *Kleyman v. SUNY Downstate Medical Ctr.*, No. 18-cv-3137, 2020 WL 5645218 (E.D.N.Y. Sept. 21, 2020), the court noted the adverse employment action language used by the Second Circuit and noted that such language is used in cases in which the failure-to-accommodate claim "was based on an adverse employment action." *Id.* at *12 n.21. The court further noted that it did "not read this requirement as applying to freestanding failure-to-accommodate claims not related to an adverse employment action[.]" *Id.* Other courts have similarly permitted free-standing failure-to-accommodate claims without requiring the plaintiff to demonstrate an adverse employment action. *See Cadoret v. Sikorsky Aircraft Corp.*, 323 F. Supp. 3d 319, 326 (D. Conn. 2018) ("Despite the fact that Plaintiff concedes he can perform the essential functions of his job, there is a triable issue of fact with respect to whether Plaintiff required an ASL interpreter to access meetings and trainings in the workplace in order to receive equal benefits and privileges of employment").

The Court finds such cases persuasive and consistent with the relevant statutory language. Under Title I of the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, *job training, and other terms, conditions, and*

*privileges of employment*." 42 U.S.C. § 12112 (emphasis added).  The federal regulations

promulgated by the EEOC further state that "[t]he term reasonable accommodation means ...

[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy

equal benefits and privileges of employment as are enjoyed by its other similarly situated

employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii).  The statutory language and

regulations clearly contemplate the availability of a free-standing failure-to-accommodate claim

even when the employee has not faced an adverse-employment action such as termination.

      Even assuming that Plaintiff is required to allege an adverse employment action, she has

done so here.  In her amended complaint, Plaintiff alleges that, because Defendant refused to

permit her to work remotely or otherwise accommodate her disability, "she had no choice but to

use her accrued time for that almost nine month period which almost completely exhausted all of

her accruals.  Plaintiff could and would have been able to work remotely during this time period."

Dkt. No. 17-4 at ¶ 72.  Plaintiff further alleges that, "[a]s a result of being forced to use her

accrued time, rather than working remotely under accommodation for her medical condition,

Plaintiff has been financially harmed by the loss of her accrued time which she will not have if

she becomes ill again.  Furthermore, Plaintiff would have been paid the value of her accrued time

at retirement and intended this money to supplement her retirement income." *Id.* at ¶ 74.  These

allegations plausibly allege a causal connection between Plaintiff's disability, the denial of the

requested accommodation, and the adverse employment consequences Plaintiff endured.  *See*

*Pesce v. Mendes & Mount, LLP*, No. 19-cv-4922, 2020 WL 7028641, *6 (S.D.N.Y. Nov. 30,

2020) (holding that the plaintiff's loss of personal benefit days "may constitute a material adverse

action"); *see also Valerio v. City of New York*, No. 18-cv-11130, 2020 WL 353749, *5 (S.D.N.Y.

Jan. 21, 2020) (holding that the plaintiff suffered a material adverse action when he was

"involuntarily placed on leave," and explaining that "timing matters" for taking leave, and an employer cannot force an employee to squander her paid time off).

Accordingly, this aspect of Defendant's motion to dismiss is denied.

### 3. Reasonable Accommodation

Defendant contends that the allegations in the complaint demonstrate that it provided reasonable accommodations to Plaintiff and that Plaintiff was not entitled to her requested accommodation of full-time telecommuting. *See* Dkt. No. 14-1 at 8-9; Dkt. No. 24 at 4-5. Plaintiff, however, contends that working remotely was a reasonable accommodation in this case, especially considering the fact that she had previously been working remotely and was able to perform the essential functions of her job. *See* Dkt. No. 18 at 13.

To show that a defendant refused to provide reasonable accommodations, a plaintiff "bears only a burden of production." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995) (citing *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991)).  The Second Circuit has made clear that this burden "is not a heavy one" and that "[i]t is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.*  "The issue of whether an accommodation is reasonable is normally a question of fact best left for determination by jury." *Steger v. Nassau Cmty. Coll.*, No. 19-CV-03026, 2022 WL 1085499, *3 (E.D.N.Y. Mar. 8, 2022) (citing *Canales–Jacobs v. N.Y. State Off. of Ct. Admin.*, 640 F. Supp. 2d 482, 500 (S.D.N.Y. 2009)) (denying the defendant's motion for summary judgment where the defendant had provided some parking accommodations for the plaintiff, which plaintiff claimed were inconsistent and therefore insufficient); *see also Borkowski*, 63 F.3d at 138.

"It is well established that an employer need only provide an accommodation that is 'sufficient to meet the job-related needs of the individual being accommodated' and has no obligation to 'to meet the personal preferences of disabled employees.'" *Anderson v. New York City Health & Hosps. Corp.*, No. 16-CV-1051, 2020 WL 2866960, *33 (S.D.N.Y. Mar. 2, 2020) (quoting *Nieblas-Love v. NYS Hous. Auth.*, 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016)).  However, "[i]f an accommodation other than the one requested is provided, that accommodation must sufficiently address the limitations of the disabled employee." *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 368 (E.D.N.Y. 2012) (citing *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005)).

The phrase "reasonable accommodation" is defined as "[m]odifications or adjustments to the work environment . . . that enable an individual with a disability who is qualified to perform the essential functions of that position" as well as "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(ii)-(iii).  A reasonable accommodation "may include adjustments to work schedules or other job restructuring." *Chesebro v. Town of Guilderland*, No. 1:18-CV-01294, 2019 WL 3891024, *8 (N.D.N.Y. Aug. 19, 2019) (quoting *McMillan v. City of New York*, 711 F.3d 120, 127 (2d Cir. 2013)).  Additionally, "the accommodation must allow the employee to perform the essential functions of [his] job at the same level as the rest of the workforce." *Id.* (quoting *Fowler v. Kohl's Dep't Stores, Inc.*, No. 1:07-CV-1197, 2009 WL 2155481, *5 (N.D.N.Y. July 16, 2009)) (citation omitted).

In the present matter, the Court finds that Plaintiff has plausibly alleged that the accommodation provided by Defendant was insufficient to meet her job-related needs and that her

requested accommodation of full-time telecommuting while undergoing immunosuppressive therapy was reasonable.  Although Defendant is correct that it did not need to provide the precise accommodations Plaintiff requested so long as it provided accommodations that adequately accommodated her disability, the Court must accept Plaintiff's allegations that she needed accommodations that would allow her to completely social distance as true at the motion to dismiss stage.  *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

Plaintiff has alleged that neither of the accommodations Defendant claims it offered her were sufficient to address her limitations.  The amended complaint alleges that the accommodation of working in her office with her door closed and without any in person meetings would not be sufficient because it is not possible for her to remain in her office for the entire eight-hour workday because her office does not have a bathroom, printer, certain office supplies, or kitchen to prepare her lunch in.  Dkt. No. 17-4 at ¶¶ 38-40.  The amended complaint also alleges that Plaintiff would need to take either the elevator or stairs to reach her office and that she is not able to distance herself from risk of exposure in either of those locations.  *See id.* at ¶ 37.

Plaintiff has alleged that working remote was a reasonable accommodation and that she was able to perform he essential functions of her job while working remotely, as she had been doing for two-and-a-half years before Defendant declined to extend her accommodations.  *See id.* at ¶ 60.  Plaintiff further alleges that on October 6, 2022, she proposed alternative accommodations, including a "private first floor office with exterior entrance and adjacent private bathroom, designated parking space, no in-person meetings, and enhanced ventilation," which Defendant denied.  *See id.* at ¶ 67.

Plaintiff has plausibly alleged that her requested accommodations would not interfere with her ability to perform the essential functions of her job and that Defendant's proposed accommodations were insufficient to address the limitations caused by her disability. While Defendant may ultimately succeed on their argument that Plaintiff's proposed accommodation would have created an undue hardship, resolution of that fact-specific inquiry is not appropriate at the motion to dismiss stage. *See Laguerre v. Nat'l Grid USA*, No. 20-3901, 2022 WL 728819, *3 (2d Cir. Mar. 11, 2022) (holding that whether allowing remote work as an accommodation would impose an undue burden under the ADA was "a material fact in dispute and one best left to the factfinder on remand); *Jackson v. N.Y.S. Off. of Mental Health*, No. 23-cv-4164, 2024 WL 1908533, *8 (E.D.N.Y. May 1, 2024) (holding that determining whether the plaintiff's requested accommodation to work remotely would impose an undue hardship could not be determined at the motion to dismiss stage) (citing cases).

Accordingly, the Court denies this aspect of Defendant's motion to dismiss.

## C.    Retaliation

In its motion, Defendant notes that the complaint "makes passing reference to Title V of the ADA, which prohibits retaliation. *See* Dkt. No. 14-1 at 9-10. Defendant contends that any such retaliation claim must fail because the complaint does not allege that Plaintiff engaged in protective activity that is causally connected to an adverse employment action. *See id.* at 10. Plaintiff has not responded to this argument and the complaint and amended complaint contain only a single cause of action for discrimination. *See* Dkt. No. 17-4 at ¶¶ 75-79. Additionally, Plaintiff's single cause of action makes clear that her sole cause of action is based on Defendant's failure to accommodate her disability. *See id.* at ¶ 78 ("Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her disability by failing

to accommodate her").  Since Plaintiff has failed to response to this aspect of Defendant's motion, Defendant's motion is granted insofar as it seeks dismissal of any alleged ADA retaliation cause of action.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 14) is **GRANTED in part and DENIED in part**;[4] and the Court further

**ORDERS** that Plaintiff's cross-motion to amend (Dkt. No. 17) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 4, 2024
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[4] Defendant's motion to dismiss is granted only as to the alleged ADA retaliation claim and is otherwise denied.

23